Victor **PEREZ,** Plaintiff,

v.

Kathleen **HAWK,** Director of the Federal Bureau of Prisons, Susan Gerlinski, LSCI Allenwood Safety Manager, D. Desantis, Allenwood Health Services Administrator, Dr. Toa Chaw, Allenwood Clinical Director, PA Kohler, Allenwood Physician's Assistant, Unknown Allenwood Lieutenant, Un-

known Personnel at Allenhouse Powerhouse, Dennis W. Hasty, MDC Brooklyn Warden, Dr. Berecky, MDC Doctor, PA Smith, MBC Physician's Assistant Unknown Personnelat MDC Brooklyn Powerhouse, the Metro Group, Inc., John Doe, Unknown BOP Personnel, Defendants.

No. 02–CV–5063(ADS)(ARL).

United States District Court,
E.D. New York.

Feb. 10, 2004.

Victor Perez, Fort Dix, NJ, Plaintiff Pro Se.

Roslyn R. Mauskopf, United States Attorney, Eastern District of New York, by Gail A. Matthews, Assistant United States Attorney, Brooklyn, NY, Attorneys for the Defendants Kathleen Hawk, Susan Gerlinski, D. DeSantis, Dr. Toa Chaw, PA Kohler, Unknown Allenwood Lieutenant, Unknown Personnel at Allenhouse Powerhouse, Dennis W. Hasty, Dr. Berecky, PA Smith, Unknown Personnel at MDC Brooklyn Powerhouse.

Landman Corsi Ballaine & Ford P.C., by Andrew Patrick Keaveney, Esq., of Counsel, New York, NY, Attorneys for the Defendants The Metro Group, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Victor Perez ("Perez" or the "plaintiff"), proceeding *pro se*, seeks monetary, declaratory, and injunctive relief for alleged violations of his Fifth and Eighth Amendment rights that allegedly occurred during the plaintiff's incarceration at the Low Security Correctional Institution Allenwood ("LSCI Allenwood") and at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"). Presently before the Court is a motion to dismiss by Kathleen Hawk ("Hawk"), Susan Gerlinski ("Gerlinski"), D. DeSantis ("DeSantis"), Dr. Toa Chaw ("Dr.Chaw"), Physician's Assistant ("Kohler"), Unknown Allenwood Lieutenant, Unknown Personnel at Allenhouse Powerhouse, Denis W. Hasty ("Hasty"), Dr. Berecky, Physician's Assistant Smith ("PA Smith"), Unknown Personnel at MDC Brooklyn Powerhouse (collectively, the "Federal Defendants") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") or, in the alternative, for summary judgment.

## I. BACKGROUND

The facts are taken from the complaint and taken as true for the purposes of this motion. The plaintiff is a federal prisoner currently incarcerated at FCI Fort Dix, New Jersey. On September 19, 2000, while incarcerated at LSCI Allenwood the plaintiff was examined by Dr. Chaw at LSCI Allenwood's Health Services Facility (the "Health Services Facility"). The plaintiff complained of "itching, swelling and red rashes on his body that expanded upon touching, and that these symptoms were spreading all over the [p]laintiff's body." Compl. ¶ 5. Dr. Chaw diagnosed the plaintiff as having an allergic reaction to something that the plaintiff had earlier consumed or touched and prescribed antihistamines for the Plaintiff.

Two days later, the plaintiff was examined by Physician's Assistant Fascina ("PA Fascina") and Dr. Chaw at the Health Services Facility because the plaintiff's

feet "had swollen to the size of [a] football" and the plaintiff was once again suffering from itching and swelling on his entire body. PA Fascina gave the plaintiff a "shot of Benadryl," ordered an HIV test and asked the plaintiff to return to the Health Services Facility several days later. Compl. ¶ 6. At the plaintiff's return visit, the plaintiff was again examined by PA Fascina who concluded that the plaintiff's rashes were attributable to something that the plaintiff consumed or touched. PA Fascina told the plaintiff that because the Bureau of Prisons (the "BOP") would not pay for an allergist or dermatologist, the plaintiff would have to determine the specific source of the irritation himself. PA Fascina again prescribed antihistamines for the plaintiff.

On October 5, 2000, the plaintiff returned to the Health Services Facility because of his ongoing chronic itching, swelling and rashes. Although the plaintiff explained to PA Fascina that the previously prescribed antihistamines "simply were not working," Compl. ¶ 8, the same medications were prescribed to the plaintiff. On October 12, 2000, the plaintiff reported to the Health Services Facility complaining of swollen lips and unhealed rashes on his body "from head to foot." Compl. ¶ 9. The plaintiff suggested to Dr. Chaw and PA Fascina that LSCI Allenwood's water supply was the source of his condition. Dr. Chaw prescribed a different type of antihistamine for the Plaintiff.

Between October 12, 2000 and November 30, 2000, the plaintiff began to experienced rapid heartbeats, a swollen tongue, shocks in the middle of the night, swelling in all of his joints and, on occasion, numbness in his entire body. The plaintiff's groin area became "grotesquely swollen" and he saw a mucus-like substance after using the bathroom. Compl. ¶ 10. The plaintiff claims that he was "brushed off"

by the staff members to whom he complained. PA Kohler indicated to the plaintiff that the problems could be related to the HIV virus and ordered the plaintiff to be tested again. Id. During this time, the plaintiff received prescriptions for antihistamines.

On December 5, 2000, the plaintiff contacted his attorney and expressed his strong fear of losing his life during his incarceration because of his severe and worsening medical condition. The plaintiff's attorney indicated that he would write a letter to Warden Susan Gerlinski ("Gerlinski"), the warden of LSCI Allenwood, to expedite a transfer. This transfer was previously proved by the BOP's Northeast Regional Director. On December 7, 2000, after he placed another call to his attorney, the plaintiff claims he was threatened by an unnamed Lieutenant that if the "plaintiff continued to 'expose' the situation to anyone 'outside or inside' the Allenwood facility" he would be placed in solitary confinement. Compl. ¶ 19. This Lieutenant also demanded that the plaintiff formally accept a finding that bathing soap was the sole cause of the plaintiff's illness. The plaintiff responded by showing the Lieutenant his rashes who immediately sent the plaintiff to Dr. Chaw.

On December 7, 2000, the plaintiff complained to Dr. Chaw that his symptoms were increasingly more severe and included swelling, different types of irritating rashes, tightness of the chest, erratic heartbeats and night shocks. Dr. Chaw declined to order that the plaintiff be examined by an allergist or dermatologist. Rather, Dr. Chaw prescribed antihistamines and calamine lotion. Dr. Chaw also dismissed the plaintiff's notion that the water supply was the source of the plaintiff's symptoms.

On December 18, 2000, DeSantis, the Health Service Administrator at LSCI Al-

lenwood, told the plaintiff that his transfer would be barred if the plaintiff does not accept the conclusion that the plaintiff's medical problems were caused by the bathing soap. DeSantis also dismissed Dr. Chaw's written recommendation that would allow the plaintiff to purchase extra bottles of water from the commissary which forced the plaintiff to consume only the water at LSCI Allenwood. DeSantis also stated that he would monitor the plaintiff closely to make certain that the plaintiff purchased a different brand of soap.

On or about December 21, 2000, Gerlinski told the plaintiff that no transfer could be effectuated because the plaintiff's records contained open medical problems. Gerlinski also informed the plaintiff that MDC Brooklyn treats its water supply with chemicals pursuant to an order of the Bureau of Prisons. Gerlinski also indicated to the plaintiff that she directed DeSantis to tell the plaintiff that unless the plaintiff accepted conclusion that the plaintiff's medical problems were caused by the bathing soap, his transfer would be barred. At this meeting, Gerlinski reiterated the position that the plaintiff had to formally accept the conclusion that his medical problems were bring caused by the brand of soap he was using. The plaintiff alleges that Gerlinski acknowledged that she oversaw all of the acts complained of and acknowledged the use of chemicals in the Allenwood water supply.

On December 25, 2000, the plaintiff submitted a form to LSCI Allenwood Safety Manager Mudge requesting that an investigation be made of the chemicals used in the treatment of the LSCI Allenwood water supply. Mudge told the plaintiff to address his complaints to the Health Services Department.

Thereafter, the plaintiff was transferred to MDC Brooklyn. On or about December 26, 2000, the plaintiff visited MDC Brooklyn's Health Services Facility to register his medical condition. The MDC Brooklyn medical staff did nothing other than prescribe antihistamine medications to the plaintiff.

On February 20, 2001, the plaintiff complained to the MDC Brooklyn Health Services staff that in addition to his previous symptoms, the plaintiff noticed that there was "highly-visible yellow gel-like discharges mingled with blood in his waste." Compl. ¶ 14. The MDC Brooklyn Health Services staff only made a "perfunctory examination" and prescribed antihistamines. Compl. ¶ 14.

Toward the end of February and the beginning of March, 2001, the plaintiff was examined by PA Smith at MDC Brooklyn Health Services Facility. At this examination, the plaintiff complained of stomach pains, yellow mucous in his stool, and irritating itching red-dots appearing on the plaintiff's pores after he perspired. PA Smith promised the plaintiff that he would speak to one of the doctors on staff to obtain a resolution of the matter.

On March 12, 2001, while the plaintiff was working at his assigned duties at MDC Brooklyn's food service facility, he suddenly experienced excruciating stomach pain and later noticed that there were substantial amounts of blood in his stool. Later that day, PA Smith told the plaintiff that he had contracted either a severe strain of the herpes virus or gonorrhea. PA Smith prescribed a combination of antibiotics for the plaintiff.

Three months later, the plaintiff once again visited MDC Brooklyn's Health Services Facility, where he was once again examined by PA Smith. The plaintiff advised PA Smith that other inmates in the plaintiff's housing unit had been complaining about similar symptoms and that he

believed that the problems were related to the water supply at MDC Brooklyn. PA Smith informed the plaintiff that he spoke with other members of the facility's health services staff about the plaintiff's concerns regarding the water supply and that Dr. Berecky, a doctor at MDC Brooklyn, dismissed the plaintiff as being "psychotic." Compl. ¶ 17.

On June 29, 2001, the plaintiff met with Dr. Berecky. The plaintiff explained that he uncovered "conclusive evidence" that the MDC Brooklyn Powerhouse was treating the water supply and causing illness among the prison population. Compl. ¶ 18. The plaintiff asked to be examined by an allergist or dermatologist but instead Dr. Berecky ordered the plaintiff to see the staff psychologist.

On March 27, 2002, Perez visited MDC Brooklyn's Health Services Unit. The attached medical record for this visit indicates that Perez "states he feels fine … [and that his] rash is under control." Medical Record dated March 27, 2002.

At some point, the plaintiff approached Mr. Butler ("Butler"), the MDC Brooklyn Safety Manager inquiring why potentially unsafe chemicals were being added to the Institution's water supply. The plaintiff claims that Mr. Butler has never accepted responsibility for determining the level and safety of the chemicals being used in the water supply. The plaintiff claims that the chemicals are distributed by the defendant The Metro Group, Inc. and these chemicals contain compounds that can have serious adverse effects on the inmate population. The staff at MDC Brooklyn deny that chemicals are being added to the MDC Brooklyn water supply.

On September 12, 2002, the plaintiff filed this complaint alleging that the Federal Defendants: (1) failed to provide the plaintiff with appropriate medical care and provide measures to secure the plaintiff's health; (2) threatened, coerced and intimidated the plaintiff because of his complaints; (3) as a result of the Federal Defendants' "policies, practices, procedures, acts and omissions, the plaintiff has suffered, does suffer and will continue to suffer immediate and irreparable injury, including physical, psychological and emotional injury." Compl. p. 12.; and (4) the conditions at LSCI Allenwood and MDC Brooklyn are incompatible with contemporary standards of decency and have caused unnecessary and wanton infliction of pain and suffering. In addition, the plaintiff claims that the Federal Defendants at MDC Brooklyn gave misleading diagnoses of the plaintiff's serious health problems, acted negligently, and failed to inform the inmate population of actions taken at the MDC Brooklyn Powerhouse which allegedly endangered the inmates' health and safety. The plaintiff claims that the water supply in both LSCI Allenwood and MDC Brooklyn contains harmful chemicals that are distributed by defendant The Metro Group, Inc. and these chemicals contain compounds that can have serious adverse effects on the inmate population.

Presently before the Court is the Federal Defendants' motion to dismiss or, in the alternative, for summary judgment. In particular the Federal Defendants argue that: (1) there is no personal jurisdiction over several of the federal defendants because they were not properly served; (2) Perez's allegations concerning his incarceration at LSCI Allenwood should be dismissed or, in the alternative, transferred to the Middle District of Pennsylvania; (3) the complaint must be dismissed to the extent that the plaintiff sues the Federal Defendants in their official capacities; (4) the plaintiff has failed to state a claim under 42 U.S.C. § 1983 ("Section 1983"); and (5) the plaintiff's allegations concern-

ing inadequate medical care do not rise to the level of a constitutional violation.

## II. DISCUSSION

### A. The Standard

#### 1. Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. *See Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (citing *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999)).

The plaintiff attached to the complaint, among other things, copies of his medical records from LCSI Allenwood, MDC Brooklyn as well as laboratory blood test results. The Court may consider this material. *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) (In a motion to dismiss under Rule 12(b)(6), a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

In addition, the Court must liberally interpret the complaint of a *pro se* plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir.1986). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 92 (2d Cir.1983) (citations omitted).

In support of their motion, the Federal Defendants submit a "declaration" by Assistant United States Attorney Gail A. Matthews and documents which are not found in the pleadings. In addition, the plaintiff's memorandum in opposition to the Federal Defendants' motion to dismiss contains facts that are not stated in the complaint. The Court may not consider this material in a Rule 12(b)(6) motion, *see Tarshis*, 211 F.3d at 39, and declines to convert their motion to one for summary judgment in order to consider the material. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (stating that a court has the choice of converting a Rule 12(b)(6) motion to one for summary judgment in order to consider material outside the pleadings but must afford all parties an opportunity to submit supporting material).

### B. Service of the Summons and Complaint

The Federal Defendants move to dismiss the complaint for lack of personal jurisdiction due to the plaintiff's failure to serve the summons and complaint on the Federal Defendants personally. Hasty and Smith claim that because they left the employment of the Bureau of Prisons (the "BOP") prior to the filing of this action, the plaintiff's mailing of service to MDC Brooklyn failed to constitute proper personal service on them. The Federal Defendants located in Pennsylvania argue

that, because they are not located in New York State, the plaintiff is not authorized to effectuate service of process via mail. Fed. Defs. Mem. of Law In Sup. of Mot. to Dismiss p. 11.

 In a *Bivens* type action such as the instant case, where government employees are sued in their personal capacity, service of the complaint must be effectuated by "personal service pursuant to Rule 4(e) or a waiver of that service pursuant to Rule 4(d)." *See Armstrong v. Sears,* 33 F.3d 182, 187 (2d Cir.1994). However, in determining whether to dismiss a case for lack of sufficient service, the court must liberally construe Rule 4 to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice and will not be prejudiced by a continuance of an action. *See Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986).

 Because the plaintiff is an incarcerated *pro se* litigant proceeding *in forma pauperis* dismissal on this ground is not required. *Tajeddini v. Gluch, et al.,* 942 F.Supp. 772, 779 (D.Conn.1996); *see also Romandette,* 807 F.2d at 311; *Daniel v. Henderson,* 155 F.R.D. 30, 31 (N.D.N.Y. 1994) ("[B]ecause an incarcerated, *pro se, in forma pauperis* plaintiff may rely on the U.S. Marshal for service of process, the court is not required to dismiss the claim against [the defendant] for failure to serve."). None of these defendants have complained that they did not receive actual notice of the lawsuit or are prejudiced by the lack of personal service. *See Tajeddini,* 942 F.Supp. at 778. Furthermore, the Office of the United States Attorney has appeared on behalf of all of the Federal Defendants and has defended the action up to this point.

## C. Venue

 The defendants maintain that the plaintiff's allegations concerning his incarceration at LCSI Allenwood should be dismissed or, in the alternative, severed and transferred to the Middle District of Pennsylvania. The Federal Defendants' motion to sever comes within the scope of Fed. R.Civ.P. 21 which permits the Court to drop parties from an action if joinder of the parties was not appropriate. *See United States v. Yonkers Bd. of Educ.,* 518 F.Supp. 191, 194 (S.D.N.Y.1981). The standards for joinder of defendants are provided by Fed.R.Civ.P. 20(a) as follows:

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendants need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Thus, the Federal Defendants' motion to sever will be granted "if the claims against the first group of defendants and the second group of defendants do not (1) relate to or arise out of the same transaction or occurrence or series of transactions or occurrences or (2) if a question of law or fact common to all defendants will not arise." *Nowak v. Coombe,* No. 91 Civ. 7335, 1992 WL 212374, at * 1 (S.D.N.Y. Aug.25, 1992) (quoting Fed.R.Civ.P. 20(a)). Given the related nature of the plaintiff's complaints against the Federal Defendants located in New York and Pennsylvania, the Court sees no reason to waste judicial resources

by trying two similar cases separately before two courts. *See Mandala v. Coughlin*, 920 F.Supp. 342, 356 (E.D.N.Y.1996). Accordingly, the Federal Defendants' motion to sever the claims relating to the Federal Defendants in Pennsylvania and transfer venue with respect to these claims is denied.

### D. Section 1983

The plaintiff brings the instant action pursuant to Section 1983. However, Section 1983 provides relief against defendants who act under color of state, not federal, law. *Wheeldin v. Wheeler*, 373 U.S. 647, 650, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). Thus, to the extent that the plaintiff asserts claims under Section 1983, these claims are dismissed.

However, because the plaintiff is proceeding *pro se*, this Court will construe his Section 1983 civil rights claim as the analogous claim applicable to federal actors under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Liffiton v. Keuker*, 850 F.2d 73, 78 (2d Cir.1988) (finding that Section 1983 action against federal defendants in the individual capacities may be entertained as a *Bivens* action which is not barred by sovereign immunity); *Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir.1988) (construing *pro se* Section 1983 action as *Bivens* action against federal defendants). The Court notes that generally, case law under Section 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir.1987) (quoting *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir.1981)).

### E. Constitutional Claims

To state a claim under *Bivens*, a plaintiff must allege a deprivation of constitutional rights by defendants acting under color of federal law. *Soichet v. Toracinta*, No. 93 Civ. 8858, 1995 WL 489434, at *3 (S.D.N.Y. Aug. 16.1995) (citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

### 1. As to the Individual Defendants

#### a. official capacity

 It is well-settled that any lawsuit against an agent or employee of the United States in his/her official capacity is an action against the sovereign itself. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, the United States is immune from constitutional tort claims against the United States, its agencies, or federal employees sued in their official capacities. *See Castro v. United States*, 34 F.3d 106, 110 (2d Cir.1994). *Bivens* only authorizes suits for monetary damages against federal officials sued in their individual capacity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 485, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Khan v. United States*, 271 F.Supp.2d 409, 413 (E.D.N.Y. 2003). Accordingly, the plaintiff's claims against the defendants insofar as they are sued in their official capacity for monetary relief are dismissed.

#### b. as to Hawk and Hasty

 As stated above, to maintain a *Bivens* action, a plaintiff must allege a violation by a federal official of a clearly established constitutional right for which the federal official does not have immunity. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Because personal involvement by a federal official is a prerequisite to liability under *Bivens*, federal officials who are not personally involved in an alleged constitutional deprivation may not be held vicariously

liable under *Bivens* for the acts of subordinates. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987) (A defendant's personal involvement with the constitutional deprivation is a prerequisite to recovery in a *Bivens* claim); *see also Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir.1981). Personal involvement may be demonstrated by evidence that (1) the defendant participated directly in the alleged infraction; (2) the defendant, with actual or constructive knowledge of the violation, failed to remedy the wrong; (3) the defendant created or permitted the policy or custom under which the unconstitutional practices occurred; (4) the defendant was grossly negligently in managing subordinates who caused the violations; or (5) the defendant failed to act on information indicating that the constitutional deprivations were taking place. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *see also Tajeddini*, 942 F.Supp. at 779.

■ Here, the plaintiff has failed to allege any facts against Hawk, the Director of the Federal BOP. With respect to Hasty, the MDC Brooklyn warden, the only mention of this defendant is that the plaintiff requested that his attorney assist him in writing a letter to Hasty to urge him to investigate the plaintiff's claims. Thus the plaintiff alleges that neither Hawk or Hasty directly participated in any of the alleged incidents or that they are liable as a supervisory official. Thus, the plaintiff's claims against these defendants in their individual capacities as supervisors are dismissed.

### c. as to Gerlinski

With regard to Gerlinski, the plaintiff alleges that (1) Gerlinski told the plaintiff that he cannot be transferred because he had open medical problems on his record; (2) Gerlinski informed the plaintiff that MDC Brooklyn treats its water supply with chemicals pursuant to an order of the BOP; (3) Gerlinski directed DeSantis to inform the plaintiff that the plaintiff's transfer would be barred unless the plaintiff accepted that his medical problems were caused by the bathing soap; and (4) that she had summoned plaintiff to her office to inform him that she could not transfer him unless he formally accepted "the conclusion that his medical problems were being caused by the brand of soap that he was using and she insisted that the plaintiff purchase different brands of soap from the commissary." Compl. ¶ 22.

As set forth more fully below, none of the allegations against Gerlinski rise to the level of a constitutional violation. *See also Montanye v. Haymes*, 427 U.S. 236, 246, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) (It is well-settled that prison officials are given broad discretion to transfer prisoners); *Davis v. Kelly*, 981 F.Supp. 178, 181 (W.D.N.Y.1997) (plaintiff has no constitutional right to a prison transfer); *see also Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y.1995) (plaintiff has no constitutional to be free from verbal harassment and threats). Accordingly, the plaintiff's claims against this defendant are dismissed. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *see also Khan v. United States*, 271 F.Supp.2d 409, 413 (E.D.N.Y.2003).

### 2. Inadequate Medical Care

■ The plaintiff asserts that he received inadequate medical care. It is well-established that a prison official's denial of access to medical care or interference with prescribed treatment may constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ To establish a constitutional claim of inadequate medical care, the

plaintiff must prove "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 105, 97 S.Ct. 285. The standard of deliberate indifference includes both objective and subjective components. First, the deprivation of care must objectively be "sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). Second, the facts must give rise to a reasonable inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them. *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir.2000); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998). However, negligence, even if it amounts to medical malpractice, does not constitute a constitutional violation. *Estelle*, 429 U.S. at 107, 97 S.Ct. 285. In *Estelle*, the United States Supreme Court summarized cases in which prison officials were deliberately indifferent to the serious medical needs of prisoners. *Estelle*, 429 U.S. at 104 n. 10, 97 S.Ct. 285 (citing *Williams v. Vincent*, 508 F.2d 541 (2d Cir.1974) (doctor threw out a prisoner's ear and stitched together the stump); *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.1974) (injection of penicillin with knowledge that prisoner was allergic and refusal of doctor to treat allergic reaction); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir.1970) (prison physician refuses to administer the prescribed pain killer and renders leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon)).

### a. A Serious Medical Condition

A medical condition is objectively considered "serious" if it is a "condition of urgency" that may result in "degeneration" or "extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996) (citing *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). This includes not only conditions affecting the plaintiff's current health problems, but also those that are "very likely to cause serious illness and needless suffering" in the ensuing weeks, months or year. *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *see also Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir.1990) (condition must be life-threatening or fast-degenerating).

The Court will assume for purpose of this motion that the plaintiff's various medical ailments constitutes a serious medical condition as they appear to be sufficiently serious and painful. *See Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir.1997) (a condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain"); *see also Chance*, 143 F.3d at 702–703 (Relevant factors to consider when determining if a serious medical condition exists include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.").

### b. Conscious Disregard of the Medical Condition

■■■ The plaintiff fails to satisfy the second, subjective, prong of the deliberate indifference standard. To satisfy the second prong, the plaintiff must allege that the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety" and that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw the inference." *Chance v. Armstrong*, 143 F.3d 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

In regard to this second element, whether or not a defendant provided the plaintiff with the care he desired is immaterial. While "the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988); *see also Choice v. Blackwell*, No. 01 Civ.1931, 2002 WL 32079466, at \* 7 (D.S.C. Mar. 29, 2002) ("although the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary.").

 The plaintiff's allegations that the doctors mis-diagnosed and mistreated his medical conditions do not rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 105–106, 97 S.Ct. 285 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) (A mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim.).

Here, the plaintiff alleges no such "deliberate" conduct by any of the defendants. *See Chatin v. Artuz*, 28 Fed.Appx. 9, 10 (2d Cir.2001) (with respect to the subjective showing, prison officials are not liable if they responded reasonably to a known risk, even if the harm ultimately was not averted) (citations omitted); *see also Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985) (treatment of a prisoner's medical condition "generally defeats a claim of deliberate indifference."). The plaintiff does not allege that prison officials "knew of and disregarded his serious medical needs, possessed culpable minds regarding his treatment, or consciously chose an easier and less efficacious treatment plan—claims that might state a claim of deliberate indifference based on inadequate medical care." *Connors v. Heywright*, No. 02 Civ. 9988, 2003 WL 21087886, at \*3 (citing *Chance*, 143 F.3d at 703).

The plaintiff's complaint and the attached records indicate that the plaintiff received frequent medical attention while incarcerated. In fact, the complaint indicates that between September 19, 2000 and March 27, 2002, the plaintiff was treated by the medical staff at FSCI Allenwood and MDC Brooklyn approximately 30 times. The plaintiff was also given blood tests, stool cultures, liver tests, x-rays, as well as prescriptions for antihistamines, Benedryl, and other medications. At most, the alleged mis-treatment of the plaintiff's condition states a cause of action for medical malpractice. However, medical malpractice is clearly not a constitutional violation. *Estelle, 429 U.S.* at 106, 97 S.Ct. 285 (medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Thomas v. Wright*, No. 99 Civ.2071, 2002 WL 31309190, at \* 9 (N.D.N.Y.2002) (Although the defendant prison officials and medical staff failed to diagnose or detect the plaintiff's cancer, the defendants did not act with "deliberate indifference" because they "ordered medical tests, prescribed courses of treatments, ... monitored his laboratory and radiological reports," and "seen numerous times.").

Accordingly, the plaintiff's constitutional claim for inadequate medical care is dismissed.

### 3. Prison Conditions

 The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health or safety...." *Farmer v. Brennan*, 511 U.S.

825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Throughout his complaint, the plaintiff claims that the water supply used by the inmate population was the cause of his medical condition. This claim is analyzed similar to a claim for inadequate medical care. *See Howard v. Headly,* 72 F.Supp.2d 118, 123 (E.D.N.Y.1999).

■■■ Here, the plaintiff alleges that he has "uncovered conclusive evidence," Compl.¶ 18, through an "independent investigation," Compl. ¶ 11, that the water supply in both LSCI Allenwood and MDC Brooklyn is being treated with harmful chemicals. The plaintiff fails to allege a clearly stated causal link between the water supply and his symptoms. In addition, the plaintiff's conclusory allegations with respect to the water supply fails to "demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." *Anderson v. Coughlin,* 757 F.2d 33, 34–35 (2d Cir.1985) (citations omitted) or that the prison officials acted with "deliberate indifference." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quotations omitted).

Accordingly, the plaintiff's claim for inadequate prison conditions is dismissed.

### 4. Retaliation

The Plaintiff claims that (1) Gerlinski threatened the plaintiff that his transfer would be barred unless the plaintiff accepted the statement that his medical problems were caused by the bathing soap; (2) on December 7, 2000, after the plaintiff contacted his attorney regarding his medical condition, an unnamed Lieutenant at LSCI Allenwood "threatened the [p]laintiff with solitary confinement if the [p]laintiff continued to 'expose' the situation to anyone 'outside or inside' the [LSCI] Allenwood facility." Compl. ¶ 20; and (3) this LSCI Allenwood Lieutenant also demanded that the plaintiff formally accept a finding that bathing soap was the sole cause of the plaintiff's illness.

In construing the complaint liberally, these claims can be construed as retaliation against the plaintiff as a result of complaints he made regarding the prison conditions. Although, prison officials may not retaliate against prisoners for exercising their constitutional rights, *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995), "claims of retaliation in the prison setting must be viewed with skepticism, however, given that virtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Tajeddini v. Gluch,* 942 F.Supp. 772, 776; *see also Montanye,* 427 U.S. at 246, 96 S.Ct. 2543; *Davis v. Kelly,* 981 F.Supp. 178, 181 (W.D.N.Y.1997) (plaintiff has no constitutional right to a prison transfer); *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995). The Court also notes that the plaintiff was transferred to MDC Brooklyn approximately three months after he was initially placed at LSCI Allenwood. Thus, this cause of action is dismissed.

### F. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. A district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (it is the usual practice upon granting a motion to dismiss to allow leave to replead).

Therefore the plaintiff is given the opportunity to serve an amended complaint.

The Court directs the plaintiff, in his amended complaint, to, among other things, set forth specifically why the defendants were allegedly "deliberately indifferent" to his medical needs. Moreover, the plaintiff is to allege specifically the facts supporting his contention that the water supply in LSCI Allenwood and MDC Brooklyn is (1) treated with harmful compounds, that (2) are harmful to himself, and (3) the overall inmate population. To this end, the Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, No. 89 Civ. 1657, 1990 WL 71502, at *10, n. 8 (S.D.N.Y. May 24, 1990):

> It has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed. R.Civ.P. 11.

The plaintiff must file his amended complaint within thirty days from the date of this order. Failure to file within this period of time will render the dismissal of those claims to be with prejudice.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Federal Defendants' motion to dismiss the claims against them is **GRANTED**; and it is further

**ORDERED**, that the plaintiff is granted leave to file an amended complaint within thirty days from the date of this order and that the failure to file within this time period will render the dismissal of all of the plaintiff's claims with prejudice; and it is further

**ORDERED**, that if the plaintiff fails to file an amended complaint within thirty days from the date of this order, the Clerk of the Court is hereby directed to amend the caption as follows:

**SO ORDERED.**