Hajotollah **TAJEDDINI**

v.

**John C. GLUCH, et al.**

**Civ. No. 5–92–cv–546 (WWE).**

United States District Court,
D. Connecticut.

Aug. 29, 1996.

Hajotollah Tajeddini, pro se.

## RULING ON PENDING MOTIONS

EGINTON, Senior District Judge.

Plaintiff, Hajotollah Tajeddini, formerly an inmate at FCI Danbury, has brought this *Bivens* [1] action *pro se* and *in forma pauperis*, against the following present and former employees of the Bureau of Prisons in their individual capacities: John Gluch, Chief Executive Officer (Warden) of FCI Danbury; Wendi Ramlal, Unit Manager, FCI Danbury; Robert Lynch, Correctional Counselor, FCI Danbury; Robert Donahue, Case Manager, FCI Danbury; Dony Cartrette, Lieutenant, FCI Danbury; Hewlett Keith, Discipline Hearing Officer, FCI Otisville (formerly at FCI Danbury); and Quincy Heck, formerly the Health Services Administrator at FCI Danbury.

Plaintiff alleges that defendants violated his rights as protected under the First, Fifth and Eighth Amendments to the United States Constitution. He seeks compensatory and punitive damages.

Pending before the court is defendants' motion to dismiss or, in the alternative, for summary judgment. Also, pending are plaintiff's motion for appointment of counsel and for leave to depose defendants and for payment of costs of discovery.

### Background

A review of the affidavits, exhibits, and Local Rule 9(c) statements of the parties, reveal the following facts. Plaintiff, at all relevant times, was an Iranian citizen. He was incarcerated at FCI Danbury from May 9, 1991, to October 10, 1991, serving out part of his 78–month sentence for Conspiracy and Importation of Heroin imposed in the District of Massachusetts on June 28, 1989. Prior to his placement at FCI Danbury, plaintiff was incarcerated at FCI Milan.

On July 24, 1991, plaintiff made a complaint to defendant Ramlal, the Bureau of Prisons' Office of Internal Affairs and the Embassy of the Democratic and Popular Republic of Algeria, Interests Section of the Islamic Republic of Iran, located in Washington, D.C. ("Embassy"), regarding disrespectful behavior and discrimination by his Correctional Counselor, Belinda Gardener. An investigation was conducted at FCI Danbury at the direction of the Office of Internal Affairs.

Sometime prior to August 27, 1991, plaintiff sent to his Embassy a copy of the affidavit of Mehrdad Azizi, plaintiff's cellmate, regarding certain events which allegedly took place on August 16. Azizi states in the affidavit that on that date defendant Lynch approached him to conspire to agitate plaintiff for purposes of having plaintiff removed from the prison unit. On August 27, 1991, the Embassy sent a copy of this affidavit to the Office of Internal Affairs.

On September 9, 1991, plaintiff was interviewed by a Special Investigative Agent ("SIA") at FCI Danbury regarding his complaints against the staff. Plaintiff claims that defendant Ramlal was present during the

---

**1.** See *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

interview. After it, plaintiff claims that he received a "harsh attitude" from Ramlal.

On the morning of September 11, 1991, defendant Ramlal ordered plaintiff to clean a spot on the floor of his assigned cell. Plaintiff refused stating that he could not complete this task due to a past knee injury. Plaintiff gave defendant Ramlal his medical restriction slip which stated that plaintiff was on limited duty status with a restriction of no prolonged standing. Due to a nerve injury in his foot, plaintiff required soft shoes and a lower bunk. Defendant Ramlal claims she then contacted the medical staff at the prison and a physician's assistant notified her that plaintiff's medical condition did not preclude him from cleaning the floor. Defendant Ramlal ordered plaintiff to clean the floor or go to the Lieutenant's office. Plaintiff went to the Lieutenant's office. Defendant Ramlal wrote up an incident report charging plaintiff with Refusing an Order and Insolence.

While in the Lieutenant's Office, defendants allege that plaintiff became loud and boisterous regarding the incident with defendant Ramlal. Defendant Cartrette and a second Lieutenant took plaintiff to the Special Housing Unit ("SHU") where he was put in the last cell which did not have cold water. Thereafter, defendant Cartrette prepared an Administrative Detention Order which advised plaintiff of the reason for his placement in administrative detention. When plaintiff was placed in SHU, an inventory of his personal property was completed by several correctional officers.

Warden Gluch was on a routine inspection of SHU that same morning. When passing plaintiff's cell, plaintiff complained to Gluch that he was unjustly housed in SHU due to his physical incapacity to perform the work ordered by defendant Ramlal and in retaliation for his previous complaints against the institution's staff. Gluch remembered that plaintiff was previously incarcerated at FCI Milan while Gluch was warden. Plaintiff claims Gluch told him there was nothing he could do for plaintiff. Defendant Cartrette claims that he does not recall Gluch stating this to plaintiff but that Gluch explained that the Unit Discipline Committee ("UDC") had three days to institute a hearing.

At 2:00 p.m. that day, plaintiff was taken from his cell to the institution hospital emergency room on a stretcher. He was given oxygen. Plaintiff claims that defendant Heck came in and called plaintiff a manipulator and ordered the correctional officers to handcuff plaintiff and let him walk back to SHU. Defendant Heck claims that plaintiff shouted obscenities at him, was diagnosed with hysteria and escorted back to his cell. At 3:00 p.m. another medical emergency was reported by SHU officers regarding plaintiff. Plaintiff was thereafter calmed down and referred to a staff psychologist.

On September 13, 1991, the UDC, chaired by defendant Donahue, held a hearing regarding the September 11, 1991, incident with defendant Ramlal. Defendant Lynch was also a member of the UDC and present at the hearing. Defendant Donahue found that there existed sufficient evidence to support the charges and sent the matter to Disciplinary Hearing Officer ("DHO") Keith for determination. Later that day, a physician's assistant responded to a call from the SHU officers regarding plaintiff. The physician's assistant diagnosed plaintiff with hypochondriasis.

On September 14, plaintiff reviewed the inventory of his personal property and noted that a brown folder with legal papers was missing. He sent an "Inmate Request to Staff Member" ("cop-out") to the Segregation Lieutenant regarding his missing folder.

On September 17, 1991, plaintiff appeared before defendant Keith. Keith found plaintiff guilty of refusing to obey an order but failed to find plaintiff guilty of insolence to a staff member. Keith gave plaintiff 30 days disciplinary segregation and 30 days commissary restrictions. This was the third disciplinary violation plaintiff had received that year. The first was on March 10, 1991, at FCI Milan when plaintiff was found guilty of Refusing an Order and Insolence. The second was on May 29, 1991, for Refusing to Work and Refusing an Order by the UDC at FCI Danbury. At some point, the May 29, 1991, incident was expunged from plaintiff's file. Defendants do not know the date on which this violation was expunged but claim

that this fact was not discovered until plaintiff was transferred from FCI Danbury.

On September 22, 1991, plaintiff sent a cop-out to the Hospital to which defendant Heck responded that plaintiff's medical condition did not warrant extra clothing and that plaintiff needed to request extra clothing from segregation. Plaintiff also submits a copy of a cop-out to the Segregation Lieutenant dated September 19, 1991, in which plaintiff requests warmer clothing.

On September 26, 1991, the Court of Appeals for the First Circuit issued an opinion on plaintiff's motion for new trial on the basis of newly discovered evidence, petition to vacate alleging ineffective assistance of counsel and motion for return of seized property. *United States v. Tajeddini*, 945 F.2d 458 (1st Cir.1991), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). By letter dated October 9, 1991, in apparent response to a letter filed by plaintiff, the Chief Deputy Clerk, First Circuit Court of Appeals, notified plaintiff that he could not preserve his right to a rehearing of the court's September 26, 1991, opinion by way of letter. He was advised to file timely motions for each specific document for which he wished the court to consider an extension of time or leave for late filing. On November 18, 1991, the First Circuit denied plaintiff's "Reconsideration Request for Extension of Time for Filing a Petition for Rehearing." The Order advised plaintiff that his only avenue would be to file a motion to recall the mandate. The Order also advised plaintiff that the motion should ask the court to reconsider its September 26, 1991, opinion and that plaintiff would need to explain and substantiate why a timely petition for rehearing was not filed.

On September 14, 17, 19, 24 and October 3 and 4, 1991, plaintiff either complained in person to the hospital staff or sent cop-outs to the hospital staff and Warden Gluch regarding his weakness, dizziness and "permanent pain," and requested to be seen by a neurologist and/or be given pain medication. The hospital staff, including defendant Heck, responded that plaintiff's condition did not require an examination by a neurologist or the use of anti-inflammatory drugs. On October 2, 1991, Gluch sent a response to plaintiff stating that pursuant to the medical staff's opinion, plaintiff did not need to see a neurologist. On September 25 and October 7, 1991, plaintiff sent cop-outs to the Education Department requesting assistance in obtaining legal materials or access to the law library while in SHU.

Defendants claim that given the number of plaintiff's disciplinary reports, his custody classification changed to medium security level requiring further security than provided at FCI Danbury. Defendant Donahue prepared a recommendation for transfer, which defendant Gluch signed and forwarded to the Northeast Regional Office for determination. Plaintiff was transferred on October 11, 1991, to FCI El Reno. Plaintiff has since been released from custody.

Plaintiff brought this action in September 1992. Construing his *pro se* verified complaint liberally, it appears that his essential claim is for retaliation. However, plaintiff also alleges that he was denied access to the courts, that he was not provided with a hearing prior to his placement in SHU or an adequate hearing subsequent to his placement in SHU, that he was discriminated against based on his religion and national origin and that he was subjected to cruel and unusual punishment.

This court subsequently granted plaintiff's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and directed the United States Marshal to serve the complaint on the defendants in their individual capacities. The Process Receipt and Returns filed with the Clerk of the Court indicate that on September 22, 1992, the Marshal's officer hand-delivered the summons and complaint for each defendant to the Paralegal Specialist at FCI Danbury.

On March 23, 1993, the defendants filed an answer. One of the affirmative defenses asserted in their answer is lack of personal jurisdiction due to the failure or insufficiency of service of process as to all of the defendants except Warden Gluch.

## DISCUSSION

A. *Motion to Dismiss for Lack of Personal Jurisdiction*

■ Defendants move to dismiss the complaint for plaintiff's failure to serve the de-

fendants individually, denying this court personal jurisdiction over them. Plaintiff in response argues that he did not know that service was not properly effected by the Marshal's officer and that any defect in the original service was remedied by his subsequent service of the defendants by certified mail.

■ Bivens actions against federal employees requires personal service pursuant to Fed.R.Civ.P. 4(e) or a waiver of process under Fed.R.Civ.P. 4(d). *Armstrong v. Sears*, 33 F.3d 182, 187 (2d Cir.1994). Service by certified mail is insufficient. *Pollack v. Meese*, 737 F.Supp. 663, 666 (D.C.1990). The Second Circuit has stated that in determining whether to dismiss a case for lack of sufficient service, the court must liberally construe Rule 4 to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice and will not be prejudiced by a continuance of the action. *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir.1986). Also, dismissal is not required where the case involves a *pro se* incarcerated plaintiff proceeding *in forma pauperis* who is entitled to rely on the Marshal's service of process. *Id.; See also Daniel v. Henderson*, 155 F.R.D. 30 (N.D.N.Y. 1994) (dismissal inappropriate where *pro se* plaintiff relied on the Marshal for service); *Moore v. Bekins Moving & Storage Co.*, 135 F.R.D. 60 (S.D.N.Y.1991) (same).

Defendant Gluch has already admitted in the answer that he was properly served with service of process thereby waiving his right to assert this defense. *See* Fed. R.Civ.P. 12(h). As to the remaining defendants, they properly reserved this defense in their answer. The Marshal's service on the Paralegal Specialist at FCI Danbury does not constitute personal service. However, construing Rule 4 liberally, dismissal of this action is not appropriate. There is no dispute that plaintiff was incarcerated at the time service was ordered and effected on the Paralegal Specialist. None of the defendants have complained that they did not receive actual notice of the lawsuit or are prejudiced by the lack of personal service. Moreover, government counsel has appeared on behalf of all of the defendants and has defended this action up to this point. Accordingly, defendants' motion to dismiss will be denied.

### B. *Motion for Summary Judgment*

■ A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Intern. Group, Inc. v. London American Intern. Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). In this case, plaintiff's verified complaint will be treated as an affidavit for summary judgment purposes to the extent it meets the requirements of Fed.R.Civ.P. 56(e). *Colon v. Coughlin*, 58 F.3d 865, 872 (1995).

### 1. *Retaliation*

■ Plaintiff claims that defendants Ramlal, Lynch, Donahue, Heck and Gluch retaliated against him as a result of complaints he made regarding the prison staff. Specifically, plaintiff alleges that defendant Lynch conspired with inmates to destroy his legal files, and that defendant Ramlal compelled him to perform work beyond his physical capacity, filed false disciplinary charges against him, and sent him to SHU on false information. Plaintiff avers that defendant Heck gave incorrect medical information to the prison staff and DHO Keith. Plaintiff also alleges that defendants Lynch and Donahue subjected him to a "malice-triggered disciplinary hearing," and that defendant Donahue and

Gluch transferred him to another prison all in retaliation.

■ Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). Claims of retaliation in the prison setting must be viewed with skepticism, however, given that "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

Construing the evidence in the light most favorable to plaintiff, he has set forth sufficient evidence to withstand defendants' motion for summary judgment on this claim. Several weeks after the letter was sent to the Bureau of Prisons regarding Lynch's alleged interest in removing plaintiff from the unit and two days after the SIA interview with defendant Ramlal, plaintiff was brought up on charges by defendant Ramlal. This sequence of events together with the Azizi affidavit describing defendant Lynch's intentions is sufficient to demonstrate that genuine issues of material fact exist as to whether retaliation was a motivating factor in the disciplinary actions against plaintiff. *See Jones v. Coughlin,* 45 F.3d 677 (1995) (the close timing of constitutionally protected activity and the disciplinary action may serve as evidence of retaliation).

■ Also, genuine issues of material fact remain as to plaintiff's claim of retaliatory transfer. It is well settled that prison officials are given broad discretion to transfer prisoners. *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Here, defendants claim that plaintiff's transfer was based on a change in his security status due to the number of plaintiff's incident reports. Defendant Donahue states in his affidavit that after plaintiff was transferred, Donahue became aware that the May 29, 1991, incident report had been expunged. The affidavit states further that this expungement had no impact on plaintiff's custody reclassification to a medium security level and the fact that plaintiff could no longer be housed at FCI Danbury. However, the recomputation of plaintiff's custody classification took place several months after

the May 29, 1991, incident and close in time to when the Azizi affidavit was sent to the Bureau of Prisons and the SIA hearing was conducted. This timing is sufficient to permit, albeit not require, a jury to infer a retaliatory motive.

■ As to defendant Heck, plaintiff does not allege any facts supporting his claim that Heck was personally involved in the alleged retaliation. A defendant's personal involvement with the constitutional deprivation is a prerequisite to recovery in a *Bivens* claim. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987). Personal involvement may be demonstrated by evidence that 1) the defendant participated directly in the alleged infraction; 2) the defendant, with actual or constructive knowledge of the violation, failed to remedy the wrong; 3) the defendant created or permitted the policy or custom under which the unconstitutional practices occurred; 4) the defendant was grossly negligent in managing subordinates who caused the violations; or 5) the defendant failed to act on information indicating that the constitutional deprivations were taking place. *Colon v. Coughlin,* 58 F.3d at 873. Plaintiff alleges that Heck gave the wrong medical information to the staff and DHO Keith regarding his medical condition. However, plaintiff has not alleged or presented any evidence that defendant Heck spoke directly to any of the defendants regarding plaintiff's medical condition prior to his placement in SHU, or before or after the UDC or DHO hearing.

■ Plaintiff does sufficiently demonstrate the personal involvement of Warden Gluch on this claim. Both parties admit that Gluch spoke to plaintiff in SHU the day plaintiff was placed there. It is also undisputed that plaintiff complained directly to Gluch that he was being retaliated against. Moreover, Gluch approved plaintiff's transfer order. This evidence is sufficient to demonstrate a triable issue. Thus, summary judgment will be denied on this claim as to defendants Ramlal, Lynch, Donahue and Gluch and granted as to defendant Heck.

### 2. *Access to Court*

Plaintiff claims that defendants Ramlal, Lynch, and Heck interfered with plaintiff's constitutional right to access to the courts by not allowing him sufficient access to his legal papers or to perform research in the main law library while in SHU.

Prisoners have a constitutional right of access to the courts for redress. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). To succeed on a claim that his constitutional right to access the courts was violated, plaintiff must demonstrate that defendants deliberately and maliciously interfered with this right, *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987), and that as a result of this interference, he suffered actual injury. *Lewis v. Casey,* —— U.S. ——, —— – ——, 116 S.Ct. 2174, 2178–82, 135 L.Ed.2d 606 (1996).

Although there is conflicting evidence regarding plaintiff's requests for legal materials while in SHU, plaintiff has not met his burden of demonstrating a triable issue regarding actual injury. Plaintiff claims that as a result of defendants' alleged actions, he lost his right to file his petition for rehearing with the First Circuit. Even if plaintiff was prevented from filing a proper motion for rehearing, the First Circuit's November 18, 1991, order, plainly informs plaintiff that he could file a motion to recall the mandate setting forth the bases as to why the court's September 26, 1991, decision was erroneous. Plaintiff has submitted no evidence to show that he filed such a motion after his October transfer to El Reno. Accordingly, summary judgment will be granted on this claim.

### 3. *Failure to Provide Hearing Prior to Placement in SHU and Failure to Afford an Adequate Hearing While in SHU*

Plaintiff claims that defendants violated his due process rights by placing him in SHU without a hearing, by not providing him with an impartial UDC hearing, and by failing to allow him to produce a witness at the UDC hearing and produce his medical records at the DHO hearing.

The threshold issue under any due process claim is whether a protected liberty or property interest is involved. In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), a Hawaii state prisoner alleged that he had been deprived of procedural due process when the prison adjustment committee refused to allow him to present witnesses at his disciplinary hearing and then sentenced him to 30 days in segregation. The Supreme Court held that neither the Hawaii prison regulations nor the Due Process Clause afforded the inmate a liberty interest entitling him to the procedural protections afforded by the Constitution. *Id.* at ——, 115 S.Ct. at 2301. The Court found that while States can create liberty interests, those interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2299 (citations omitted).

The Court determined that the inmate's placement in disciplinary segregation for thirty days "did not work a major disruption [in the plaintiff's] environment" and thus, did not constitute the "kind of atypical, significant deprivation in which a state might create a liberty interest." *Id.* at —— – ——, 115 S.Ct. at 2300–01. The decision in *Sandin* applies retroactively. *Samuels v. Mockry,* 77 F.3d 34, 37 (2d Cir.1996).

Here, there is disagreement as to how long plaintiff was placed in SHU. The court will assume for purposes of this discussion that plaintiff's stay in SHU was for 35 days, as he argues. In applying *Sandin,* plaintiff has not alleged any "atypical" and "significant deprivation" resulting from his stay in SHU "in relation to the ordinary incidents of prison life." Plaintiff did not have a protected liberty interest in remaining free from SHU entitling him to the procedural protections required under the Constitution.

Even if a liberty interest existed, defendants satisfied the minimum due process requirements. Plaintiff was given notice of the charges against him and an opportuni-

ty to present his views to the UDC and the DHO within a reasonable amount of time. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Accordingly, summary judgment will be granted on these claims.

### 4. *Equal Protection*

██ Plaintiff alleges that defendants Lynch, Ramlal and Gluch harassed him and discriminated against him on the basis of his religion and ethnic background. Although the Fifth Amendment does not include an Equal Protection clause like the Fourteenth Amendment, it does prohibit discrimination that is so unjustifiable as to be violative of due process. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975) (internal quotations marks and citations omitted).

██ Here, plaintiff's claims must fail. Verbal harassment by correctional officers does not amount to a constitutional deprivation. *Alnutt v. Cleary,* 913 F.Supp. 160, 165 (W.D.N.Y.1996). Also, plaintiff fails to allege any facts in his verified complaint supporting his claim of discriminatory conduct. Mere conclusory statements will not suffice on a motion for summary judgment. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987).

### 5. *Cruel and Unusual Punishment*

Plaintiff alleges violations of his Eighth Amendment rights against cruel and unusual punishment by defendants' alleged failure to provide him with adequate medical care, personal safety, and heat and cold water while in SHU.

██ The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes, including those punishments that involve the unnecessary and wanton infliction of pain. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). It imposes duties on prison officials to provide humane conditions of confinement by ensuring inmates receive adequate food, clothing, shelter and medical care, and to take reasonable mea-

sures to guarantee inmates' safety. *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1975, 128 L.Ed.2d 811 (1994).

██ To establish an Eighth Amendment claim based on prison conditions, a prisoner must demonstrate that the prison officials acted with "deliberate indifference." This standard has both objective and subjective components. Objectively, the deprivation must be sufficiently serious to deny the prisoner the minimal civilized measures of life's activities. Subjectively, the prison officials must have acted with a sufficiently culpable state of mind by knowing of and disregarding an excessive risk to inmate health or safety. Under the subjective component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir. 1996).

### a. *Medical Needs*

██ Plaintiff claims that defendants Heck and Gluch showed deliberate indifference to plaintiff's serious medical needs. As to defendant Heck, plaintiff refers to the incident in the emergency room where Heck called plaintiff a manipulator and ordered several correctional officers to put handcuffs on plaintiff and let him walk back to SHU. Plaintiff avers that defendant Heck also did not allow him to see a neurologist in light of his weakness, dizziness and pain and his history of neurological and nerve injuries. As to defendant Gluch, plaintiff alleges that he acted with deliberate indifference by having full knowledge about the inadequate medical care plaintiff was receiving and ignored it.

██ Deliberate indifference to serious medical needs of prisoners may be manifested by prison doctors in their response to the prisoner's needs. However, medical malpractice or a difference of opinion as to the proper treatment plan do not constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976).

It is evident from the record that plaintiff received extensive medical care. Defendants argue that plaintiff's claim presents only a disagreement with a medical prognosis. The court does not agree that the record at this point establishes as a matter of law that defendant Heck did not exhibit deliberate indifference when treating plaintiff. Construing the record in the light most favorable to plaintiff, factual issues remain regarding the seriousness of plaintiff's medical needs and the adequacy of defendant Heck's response to those needs. Defendant Heck states in an affidavit that plaintiff's condition did not require an examination by a neurologist or the administration of pain medication. Given plaintiff's allegations that he was experiencing "trembling," "weakness" and "permanent pain" while in SHU and repeatedly requested pain medication, credibility issues remain for the factfinder's determination, not the court on a motion for summary judgment. *See Kaminsky v. Rosenblum*, 737 F.Supp. 1309 (S.D.N.Y.1990) (determining difference between malpractice and deliberate indifference is factual issue not to be decided at summary judgment stage); *See also Archer v. Dutcher*, 733 F.2d 14, 16 (1984) (while prisoner's case may well be without merit, her affidavit in opposition to motion for summary judgment raises material factual disputes).

█ As to defendant Gluch, summary judgment is appropriate because plaintiff has failed to show that Gluch was personally involved in the alleged Eighth Amendment violation. Generally, supervisory officials may defer to the medical staff concerning the proper course of treatment of an inmate unless there is evidence that the official acted reckless in supervising his subordinates. *Liscio v. Warren*, 718 F.Supp. 1074, 1082 (D.Conn.1989), *rev'd on other grounds*, 901 F.2d 274 (1990).

From Gluch's October 2, 1991, response to plaintiff's cop-out, it is clear that Gluch did not ignore plaintiff's complaints. There is also no evidence in the record that Gluch had any reason to believe that the medical care given by the prison personnel was inadequate or that Gluch was reckless in supervising the medical staff.

### b. *Lack of Heat and Cold Water*

Plaintiff alleges that while in SHU the heating was inadequate and there was no cold water. While the evidence may eventually show that these deprivations were not sufficiently serious, defendants have not addressed this issue, and accordingly, have not met their burden of demonstrating lack of genuine issues of material fact.

### c. *Safety*

█ Plaintiff claims that defendants Lynch and Ramlal jeopardized his safety by conspiring with others and ordering other inmates to cause him harm. Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). In his verified complaint, plaintiff provides only conclusory allegations that defendants Lynch and Ramlal ordered other inmates to cause him harm. As noted above, this will not suffice on a motion for summary judgment.

### C. *Motion for Appointment of Counsel*

The court reserves decision on plaintiff's motion for appointment of counsel pending an update of his August 3, 1995, Financial Affidavit.

### D. *Motion for Leave to Conduct Deposition of Defendants Upon Oral Examination and for Payment of Costs of Such Discovery*

█ Although plaintiff seeks leave of court to conduct defendants' depositions, his motion discusses only his indigent status and lack of ability to pay for such discovery. Construing this motion solely as a request for a court order directing payment of the costs of deposing defendants, the motion will be denied. *In forma pauperis* status does not require the Government to advance funds to pay for deposition expenses. *Doe v. United States*, 112 F.R.D. 183, 185 (S.D.N.Y. 1986).

### Conclusion

For the foregoing reasons, defendants' Motion to Dismiss [# 37] is DENIED. Defen-

dants' Motion for Summary Judgment [# 37] is GRANTED to defendant Heck on plaintiff's retaliation claims and to defendant Gluch on plaintiff's claims of deliberate indifference to medical needs. Summary judgment is also GRANTED on plaintiff's claims regarding interference with access to the courts, failure to provide hearing prior to placement in SHU, failure to afford adequate hearing while in SHU, violation of equal protection rights and jeopardizing plaintiff's safety. Summary judgment is DENIED to defendants Ramlal, Lynch, Donahue and Gluch on plaintiff's claims of retaliation, to defendant Heck on plaintiff's claims of deliberate indifference to medical needs and on plaintiff's claim of deliberate indifference to conditions of confinement relating to lack of heat and cold water.

Decision on plaintiff's motion for appointment of counsel [# 34] is reserved until plaintiff supplements his financial affidavit. Plaintiff's motion for payment of the costs of deposing defendants [# 35] is DENIED.