Duane ZIEMBA, Plaintiff,

v.

John ARMSTRONG, et al., Defendants.

No. CIV.A.3–98–CV–2344(JCH).

United States District Court,
D. Connecticut.

Nov. 8, 2004.

Antonio Ponvert, III, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, James J. Nugent, Nugent & Bryant, Orange, CT, for Plaintiff.

Matthew B. Beizer, Neil D. Parille, Perry A. Zinn Rowthorn, Hartford, CT, Elliot B. Spector, Michelle N. Holmes, Sack, Spector & Karsten, West Hartford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NO. 271]

HALL, District Judge.

The plaintiff, Duane Ziemba, is an inmate of the Connecticut Department of Correction and has filed this civil rights action alleging that on August 12 and 13, 1998, his rights under the Eight Amendment were violated by the five moving defendants. Plaintiff claims that the defendants, John Armstrong, Giovanny Gomez, Dennis Oglesby, Reginald McAllister, and Margaret Clark, failed to provide constitutionally adequate health care, failed to protect Ziemba from the use of excessive force, and used excessive force and, thus, violated Ziemba's rights under the Eighth Amendments of the United States Constitution. Pl.'s Am. Compl. [Dkt. No. 238] at ¶¶ 44–91. Ziemba also claims that Armstrong has supervisory liability for the wrongs committed against him. *Id.* Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants have now moved for summary judgment, arguing that (1) the plaintiff has failed to exhaust his administrative remedies with respect to his mental health claims, (2) the complaint fails to state a claim upon which relief can be granted due to lack of personal participation by the five defendants, (3) the plaintiff's allegations do not rise to the level of a constitutional violation and (4) the defendants are shielded from liability by the doctrine of qualified immunity.

## I. FACTUAL BACKGROUND

We consider the facts in the light most favorable to the plaintiff. On August 11, 1998, Ziemba was transferred to Northern Correctional Institution. On August 12, 1998, Ziemba set off the sprinkler in his cell and flooded the cell because correctional officers were allegedly refusing to feed him. In response, Mangiafico, a defendant in this case who previously moved unsuccessfully for summary judgment, ordered Ziemba to be extracted from his cell. An officer videotaped the extraction of Ziemba from his cell, his transfer to another cell, and his subsequent placement in four point restraints.

Mangiafico ordered Ziemba to put his hands through the trap door of his cell to

be handcuffed, and Ziemba failed to respond. After Mangiafico sprayed a chemical agent in the trap door, Ziemba complied with the order and placed his hands in the trap door to be handcuffed. Correctional officers then placed Ziemba in a shower to be decontaminated.

After the shower, correctional officers escorted Ziemba in handcuffs and leg restraints to another cell. During his transfer, Ziemba yelled and screamed that the officers were hurting him by twisting his wrists in the handcuffs. In the new cell, the officers strip searched Ziemba and then placed him face down on a cell bunk in his underwear and a t-shirt. The officers applied four point restraints to his legs and arms. While restrained, Ziemba was examined by members of the facility's medical staff, including Clark, a nurse, and McAllister, a medic. Oglesby, a lieutenant, accompanied two nurses, neither of whom is a defendant in this case, who examined Ziemba between midnight and six a.m. on August 13. Ziemba asked the medical staff to check his face where he claimed Mangiafico had hit him and to check his wrists because they were injured. Medical personnel checked Ziemba and observed no injuries.

On August 13, officers removed Ziemba from four point restraints. Ziemba again asked medical personnel to look at his face because it had been injured and complained that his back was hurting him. Officers then escorted Ziemba back to his cell. During the transfer, Mangiafico noticed an abrasion on the left side of Ziemba's face beneath his eye. Because the battery in the videotape recorder went dead, the transfer of Ziemba back to his cell was not videotaped.

The State of Connecticut Department of Correction Security Division investigated Ziemba's complaint that prison officials had used excessive force against him. The investigators concluded that no excessive force had been used in escorting Ziemba to the cell, but that Mangiafico had used more force than was necessary to control Ziemba during the application of the four point restraints in violation of Administrative Directive 2.17(5)–B–2, entitled Excessive or Unnecessary Use of Force. The Security Division also concluded that medical personnel did not address Ziemba's complaints concerning injuries to his face, wrists and back when they entered his cell after the application of the restraints.

## II. DISCUSSION

### A. Introduction

Arguing that Ziemba failed to exhaust his administrative remedies with respect to some of his claims, the defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendants also argue that Ziemba's complaint fails to state a claim upon which relief can be granted because it does not allege personal participation on the part of the defendants. In addition, defendants argue that Ziemba's allegations with respect to his medical treatment fail to state a claim upon which relief can be granted because his allegations do not rise to a constitutional violation. Finally, defendants claim that all five moving defendants acted within the scope of their qualified immunity as employees of the State of Connecticut.

### B. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See,* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d

Cir.2000). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 (1986). The nonmoving must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum,* Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991). Further, a party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. *See Securities & Exchange Comm'n v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). *See also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

## C. The Prison Litigation Reform Act

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) limits the ability of prisoners to bring federal actions "with respect to prison conditions." Prisoners cannot pursue section 1983 or other federal actions alleging deficiencies in prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute defines the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release or diversionary program." 42 U.S.C. § 1997e(h).

■ The Second Circuit recently clarified the application of the section 1997e(a) exhaustion requirement to cases brought by prisoners with respect to prison conditions. Where "a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies," a three-part inquiry guides the analysis of whether a plaintiff has met the requirements of section 1997e(a). *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir.2004). First, it must be determined whether administrative remedies were available for the purposes of section 1997e(a). Second, the court must consider whether the defendant, by failing to raise or preserve the defense of exhaustion or by inhibiting the ability of the plaintiff to pursue administrative remedies, forfeited or is estopped from raising failure to exhaust as a defense. Lastly, where administrative remedies were available and the defendant has not forfeited the defense of failure to exhaust, this court must consider whether special circumstances existed to excuse the plaintiff's failure to pursue or exhaust available administrative remedies. *Id.*

While the term "prison conditions" is left undefined in section 1997e(a), the Supreme Court has found that the term does not exclude "single incidents, such as corrections' officers use of excessive force, actions that immediately affect only particular prisoners." *Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Indeed, the Court has confirmed that the exhaustion requirement of 42 U.S.C. § 1997e(a) applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S.Ct. 983. The case at hand undoubtedly falls into this broad category. Plaintiff's allegations are "about prison life" and claim a wrong was committed by prison officials.

## D. Ziemba Exhausted Administrative Remedies

Ziemba's Amended Complaint [Dkt. No. 238] includes claims that the defendants were deliberately indifferent to Ziemba's medical needs and failed to provide constitutionally adequate care. ¶¶ 47–52. In their Motion for Summary Judgment, the defendants do not dispute that Ziemba exhausted administrative remedies with respect to his claims of excessive force and, indeed, this court ruled on defendants' contentions that such claims were not exhausted in an earlier Ruling on Motion for Ruling on the Pleadings [Dkt. No. 193]. *See* Def.'s Memo. Of Law in Supp. Of Their Mot. For Summ. J. [Dkt. No. 272] at 6. The defendants now claim that Ziemba failed to exhaust his administrative remedies with respect to his medical needs claim and, therefore, that they ought to prevail on all such claims on summary judgment.

■ A prisoner must meet the administrative exhaustion requirement with respect to each claim he brings in federal court. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir.2004) (dismissing prisoner's Eighth Amendment claim for failure to exhaust administrative remedies while reinstating his claim under the Fourteenth Amendment). In *Ortiz*, for example, the prisoner had two claims. The first alleged that an administrative hearing that resulted in his confinement in a Solitary Housing Unit (SHU) denied him due process under the Fourteenth Amendment. The second alleged that his confinement in the SHU constituted cruel and unusual punishment under the Eighth Amendment. While Ortiz appealed the decision that resulted in his confinement, he did not file an adminis-

trative grievance with respect to the circumstances of his confinement; thus, the Fourteenth Amendment claim was allowed to stand but the Eighth Amendment claim was dismissed. *Id.* In that case, however, the two claims related to two different incidents. The first was a disciplinary hearing; the second was a ninety-day-long confinement and the conditions of that confinement.

In the instant case, all claims arise out of the aforementioned incident that occurred on August 12 and 13, 1998 at the Northern Correctional Facility. Ziemba filed no fewer than three Level 1 grievances in August and September of 1998 with respect to the incident. Ziemba's claims that prison officials were deliberately indifferent to his medical needs are based on the defendants' actions immediately prior to and during Ziemba's restraint for a twenty-two hour period on August 12 and 13. Ziemba claims that prison officials failed to treat his psychiatric condition during that period such that they violated his Eighth Amendment rights. According to a Level 1 grievance filed by Ziemba on September 1, 1998, "Officials left me (4) pointed for 24 hours when I never made one noise or was I[sic] disruptive. I was seriously abused." *See* Def.'s Memo. of Law in Supp. of Their Mot. for Summ. J. [Dkt. No. 272], Ex. C.

Ziemba filed at least three Level 1 grievances with respect to the actions of prison officials immediately prior to and during his confinement in four-point restraints. All three grievances were denied. Ziemba then attempted to appeal those denials. It appears that prison officials summarily dismissed Ziemba's attempts to appeal. In fact, Ziemba made at least six direct requests to Warden Gomez, on an Inmate Request Form, for Level 2 grievance forms. These requests were dismissed on all six occasions. One such

request cited "the officials abusing me on August 11, 1998[sic] when I came here." Aff. in Supp. of Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 284], Ex. 14. In response to that request, Warden Gomez responded, "We will make the decision which grievances are processed and responded to. As you have already been advised you will not at this time be provided level 2 or 3 grievance forms." *Id.*

■ Ziemba's numerous grievances and discussion therein of the events of August 12 and 13 and of abuse by prison officials satisfy the exhaustion requirement of the PLRA. The Prison Litigation Reform Act was intended to limit the number of frivolous lawsuits filed by prisoners for solely "recreational" purposes. *Greig*, 169 F.3d at 167. The legislative history included statements by the senators who introduced the bill in the Senate that expressed the concern that prisoners have unique incentives to file numerous frivolous lawsuits. *Id.* According to a more recent case, "[T]he purpose of the PLRA... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process.... To effect this goal, Congress erected an array of procedural barriers designed to make it more difficult for inmates to bring suit in federal court, including what is now codified as section 1997e(a)." *Ortiz*, 380 F.3d at 658 (internal citations omitted). Section 1997e(a) acts as a filter for lawsuits brought by prisoners in an attempt to limit strain on the federal judicial system. Additionally the administrative exhaustion requirement allows the Department of Correction to address grievances internally and to provide remedies for legitimate complaints. *Porter v. Nussle*, 534 U.S. 516, 516–17, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

■ Ziemba's Level 1 grievances provided the Department of Correction every opportunity to investigate the incidents of

August 12 and 13. Ziemba's grievances plainly allege prison official abuses related to excessive force as well as to indifference to his physical and mental state during the course of the restraint. Def.'s Memo. Of Law in Supp. Of Their Mot. For Summ. J. [Dkt. No. 272], Ex. C and Aff. in Supp. of Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 284], Ex. 14. In the short space provided on DOC's Inmate Grievance Form A, Level 1, Ziemba described his complaint in some detail. That he specifically referred to "excessive force" does not deny him limit his ability to pursue claims other than excessive force, with respect to which administrative remedies were exhausted, in federal court.

DOC summarily denied each of Ziemba's Level 1 grievances. Exhaustion of administrative remedies requires that a prisoner appeal a denial of Level 1 grievance. In this case, however, DOC refused to consider an appeal. In fact, prison officials denied Ziemba the opportunity to file such an appeal. Aff. in Supp. of Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 284], Ex. 14. Ziemba exhausted his claims with respect to denial of medical treatment with respect to the period of time in which he was restrained on August 12 and 13. *See Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004) (finding that the affirmative defense that a prisoner failed to exhaust administrative remedies is subject to estoppel).

While the court finds that Ziemba exhausted his administrative remedies with respect to claims of excessive force and deliberate indifference to his medical care by filing numerous grievances with the Department of Correction, it is noteworthy that those of Ziemba's claims that implicate medical treatment or diagnosis were not grievable in the Department of Corrections procedures at the time of the alleged violations. Def.'s Memo. of Law in Supp. of Their Mot. for. Summ J.

[Dkt. No. 272], Ex. A ("The following matters are not grievable ... Health Services diagnosis or treatment decisions"). Disagreements regarding diagnosis or treatment are not grievable under the relevant Administrative Directive. *See* Ruling on Def.'s Mot. for J. on the Pleadings [Dkt. No. 193] at 7. Defendants argue that Ziemba's complaints implicated not a disagreement regarding diagnosis or treatment, but denial of treatment. Under the circumstances, the court is skeptical that this distinction is substantive or has any bearing on the fact that Ziemba's claims, insofar as they pertain to treatment of his medical problems, were not grievable through Department of Correction procedures. The decision not to provide Ziemba with prescribed medication is a treatment decision, not subject to the Department of Corrections administrative grievance procedure in 1998. *Id.* Furthermore, Ziemba disputes the diagnosis of the medical staff who examined him during his restraint and the failure to treat his psychiatric problems immediately prior to and during his restraint. This disagreement is not grievable. To the extent that Ziemba's complaints include a complaint that the defendants denied him prescribed medication and, therefore, denied him medical treatment, a claim that may have been grievable under the DOC Administrative Directive, the court finds that Ziemba grieved that complaint.

### E. Personal Involvement

The court next turns to defendants' argument that they are entitled to summary judgment because they did not personally participate in the alleged constitutional violations. An individual is not subject to liability under section 1983 "[a]bsent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates." *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987). Ziemba must provide

some evidence that the defendants were personally involved in the alleged constitutional violations.

Defendants casually refer to the plaintiff's claims of excessive force as the "Mangiafico Claim," thus attempting to distance themselves from the allegations that they were each personally involved in the unconstitutional use of excessive force against Ziemba. Ziemba's claims with respect to excessive force, however, are not limited to Mangiafico's assault of the plaintiff. Instead, they extend to the entire 22-hour period during which Ziemba was restrained. This is clear not only from his Amended Complaint, but also on the face of Ziemba's Level 1 grievances filed with DOC in August and September of 1998. The court must consider the personal involvement of each of the defendants with respect to both the excessive force and medical health claims.

### 1. Armstrong

 Defendant Armstrong is accused of failing to provide constitutionally adequate medical care on the basis of supervisory liability. Pl.'s Am. Compl. [Dkt. No.238] at ¶¶ 49–51. In a section 1983 action, supervisory liability does not result from a respondeat superior theory. Instead, the plaintiff must demonstrate that a supervisor was personally involved in the violation. The Second Circuit has found that "a supervisory official may be personally liable if he or she has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir.1989) (internal quotations and citations omitted).

The liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003) (citations omitted). Ziemba's claim regarding Armstrong's personal involvement is based on Armstrong's obligations under Connecticut law to train and supervise DOC employees as well as Armstrong's policy-making authority. Aff. in Supp. of Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 284] at 18. Ziemba argues that the alleged failure to provide training with respect to the use of four-point restraints constituted personal involvement by Armstrong and points to deposition testimony to support both the lack of formal training as well as the need for such training. *Id.* at 18; *see also Id.*, Ex. 22. In order to prevail on a "failure to train" theory, Ziemba must prove that Armstrong was deliberately indifferent to the rights of those with whom the untrained officials come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The parties acknowledge that the use of four-point restraints constitutes the use of force. Def.'s Memo. Of Law in Supp. Of Their Mot. For Summ. J. [Dkt. No. 272], Ex. W. Failure to train prison officials on the correct use of force may constitute deliberate indifference to the rights of inmates who will be subject to such force. Furthermore, viewing the facts in the light most favorable to the plaintiff, such a failure to train may constitute "grossly negligent supervision of subordinates who committed a violation." *Hernandez*, 341 F.3d at 144.

Ziemba also points to medical treatment policies for which Armstrong maintained responsibility that sanctioned "conduct amounting to a constitutional violation." *Id.* For example, Ziemba creates a triable issue of fact with respect to DOC's policy and custom regarding the transfer of physician's orders and medical files between facilities when inmates were transferred between facilities. Pl.'s Memo. of Law in Opp. to the Def.'s Mot. for Summ. J. [Dkt. No. 282] at 19 (*citing* Transfer Summary, Def.'s Memo. in Supp. of Their Mot. for Summ. J. [Dkt. No. 272], Ex. H).

■ Lastly. Armstrong's responses to Ziemba's complaints, sent to Armstrong after Ziemba attempted unsuccessfully to utilize the DOC inmate grievance procedure, create a triable issue of fact with respect to the possibility of Armstrong's liability for "failure to remedy a wrong after being informed through a report or appeal." *Id.* Armstrong may also be found to have personally participated based on his failure to respond to reports and complaints of use of force against Ziemba prior to August 1998 so as to prevent or make less likely the alleged use of excessive force that took place on that day. Aff. in Supp. of Pl.'s Opp. to Def.'s Mot. For Summ. J. [Dkt. No. 284], Ex. 15. These actions, or failure to act, may support claims that Armstrong either failed to remedy a wrong of which he had notice or that he failed to act on information that constitutional violations were occurring. *Hernandez,* 341 F.3d at 144. Certainly, material issues of fact exist with respect to Armstrong's involvement in the use of excessive force.

On the question of deliberate indifference to health, however, a number of district courts have concluded that "supervisory officials are... generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment." *See, e.g., Abdush–Shahid v. Coughlin,* 933 F.Supp. 168, 183 (N.D.N.Y.1996). Generally, supervisory officials may defer to the medical staff concerning the proper course of treatment of an inmate unless there is evidence that the official acted reckless in supervising his subordinates." *Tajeddini v. Gluch,* 942 F.Supp. 772, 782 (D.Conn. 1996). Ziemba has not presented evidence that Armstrong was reckless in his supervision of medical personnel. He has, however, presented evidence that policies over which Armstrong had authority resulted in violations of Ziemba's Eighth Amendment rights because those policies were deliberately indifferent to Ziemba's medical health needs. For example, such policies did not limit the amount of time Ziemba could be maintained in restraints and allowed prison officials to address an inmate's mental illness by restraining him for 22 hours rather than providing prescribed psychiatric medications. Therefore, Ziemba has created a triable issue of fact with respect to Armstrong's supervisory liability for "creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue." *Hernandez,* 341 F.3d at 144.

### 2. Gomez

■ Similarly, Ziemba has provided adequate support for his contention that Gomez personally participated in the alleged constitutional violations to preclude a finding of summary judgment in Gomez' favor. An incident report completed by Mangiafico shows that Gomez was notified of the restraint and the behavior that resulted in imposition of the restraint forty-five minutes after it began. Aff. in Supp. of Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 284], Ex. 18. Gomez testified in a deposi-

tion that he did not recall whether he authorized restraining Ziemba in four-point restraints. *Id.*, Ex. 3 at 13. While he first testified that he had been notified of Ziemba's restraint about four hours after Ziemba was first placed in four-point restraints, he later testified that he did not recall whether such a conversation had taken place. *Id.* at 15. In addition, as Gomez testified at the deposition, DOC policy requires that the warden be notified whenever an inmate is restrained for more than 1 hour. *See Id.* at 16; Def.'s Memo. Of Law in Supp. Of Their Mot. For Summ. J. [Dkt. No. 272], Ex. W. "Evidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." FED. R. EVID. 406. Thus, Gomez' deposition testimony and the policy together provide sufficient evidence to create questions of material fact with respect to Gomez' personal involvement in both the deliberate indifference to Ziemba's medical needs as well as to the use of excessive force.

### 3. Clark

Clark's personal involvement stems from her examinations of Ziemba on the morning of August 13. While Clark denies that her examinations gave her reason to question the use of four-point restraints or the treatment, or lack thereof, of Ziemba's mental, psychological, and physical illnesses, Ziemba's deposition testimony as well as documentary evidence provide sufficient facts to create a material question with respect to Clark's liability. Given Clark's involvement in examining Ziemba while he was restrained, there is no doubt that she was personally involved.

### 4. McAllister

■ McAllister assessed Ziemba twice on August 13. He claims that on neither occasion did he have reason to believe that Ziemba's constitutional rights to medical attention or not to be subjected to the use of excessive force were violated. To refute this testimony, Ziemba offers his own deposition testimony as well as that of Mangiafico. In addition, Ziemba points to the videotape to provide support for his claim that McAllister was deliberately indifferent to his medical needs and that McAllister failed to remove the four-point restraints in a timely fashion, thus participating in the use of excessive force against Ziemba. While McAllister points to the fact that Ziemba was released from restraint forty-five minutes after McAllister first saw Ziemba, forty-five minutes is not the operative time in this instance. Instead, what is operative in considering whether excessive force was used is that those forty-five minutes constituted the last forty-five minutes of a twenty-two-hour-long restraint. If twenty-two hours in four-point restraints constitutes excessive force, certainly the last forty-five minutes of that length of time involve use of excessive force. McAllister's presence and participation in the incident satisfies the personal involvement requirement and there remain questions of material fact with respect to his liability.

### 5. Oglesby

■ Oglesby's alleged personal involvement stems from his accompaniment of medical personnel to Ziemba's cell on the morning of August 13. While Oglesby denies that he ought to have removed the restraints at any time prior to their removal on August 13, Ziemba's deposition testimony as well as documentary evidence provide sufficient facts to create a material question with respect to Oglesby's liability. Given that Oglesby accompanied medical personnel to Ziemba four times while Ziemba was restrained and, on each occa-

sion, had the opportunity to authorize removal of the restraints, there is no doubt that he was personally involved in the alleged use of excessive force. On the question of deliberate indifference to health, however, Oglesby was entitled to rely on the expertise of the medical staff whom he accompanied in their examinations of Ziemba. Unlike Armstrong, he had no supervisory or policy-making authority that might support a theory of liability against him. Therefore, he was not personally involved in the alleged deliberate indifference to Ziemba's health and cannot be found liable under section 1983 on this claim.

### F. Ziemba States a Claim for a Constitutional Violation

■■■ Deliberate indifference to serious medical needs constitutes a violation of a prisoner's Eighth Amendment rights. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . . proscribed by the Eighth Amendment". *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05, 97 S.Ct. 285. Claiming that prison officials were negligent with respect to a prisoner's medical needs is insufficient to state an Eighth Amendment claim. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. 285.

■■■ Ziemba's allegations undoubtedly state a claim that prison officials were deliberately indifferent to his medical needs during August 12–13, 1998. Ziemba claims that the five defendants neglected to examine Ziemba thoroughly despite a history of mental and psychological illness and Ziemba's demonstration of extreme anxiety and agitation. Pl.'s Am. Compl. ¶¶ 6–7. According to the complaint, rather than respond to Ziemba's obvious need for medical services, demonstrated both by medical records that ought to have been accessed by prison officials and by Ziemba's behavior before those officials, prison officials subjected Ziemba to severe physical restraints and, while going through the motions of providing required medical examinations, instead provided only cursory examinations, failed to provide medication that had been prescribed by a physician, and failed to address obvious physical ailments resulting from the use of excessive force. The Amended Complaint, therefore, states a claim with respect to deliberate indifference to medical needs on which relief can be granted with respect to defendants Armstrong, Gomez, Clark, and McAllister.

### G. Qualified Immunity

A prison official cannot be held liable for official acts so long as "his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine the validity of the claim of qualified immunity, this court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *see also Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Defendants do not dispute that Ziemba's claims that excessive force was used

against him constitute a claim of an Eighth Amendment violation. The alleged failure of the five defendants to act to protect Ziemba from the use of the four-point restraints clearly constitutes an Eighth Amendment claim. In addition, as described above, Ziemba's claims with respect to the severe insufficiency of the medical treatment he received constitutes a claim that the defendants violated plaintiff's Eighth Amendment rights.

We next consider whether Ziemba's Eight Amendment right was clearly established at the time of the alleged violations. *See Wilson*, 526 U.S. at 614, 119 S.Ct. 1692. An official cannot benefit from the doctrine of qualified immunity if he had "'fair warning' that his conduct deprived his victim of a constitutional right." *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Viewing the disputed facts in the light most favorable to the plaintiff, defendants are not entitled to qualified immunity. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eight Amendment." *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Supreme Court has found that "a deliberately indifferent failure to protect petitioner's safety" constituted "a violation of petitioner's Eight Amendment rights." *Farmer*, 511 U.S. at 831, 114 S.Ct. 1970. *See also Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be ap-

parent." *Hope*, 536 U.S. at 739, 122 S.Ct. 2508 (internal citations and quotations omitted). In *Hope*, the Supreme Court found that subjecting a prisoner to a seven-hour restraint without water or access to a bathroom violated a prisoner's rights under the Eighth Amendment. While there are differences between the restraint suffered by Hope and that alleged by Ziemba, they are sufficiently similar that a prison official ought to have understood that restraining a mentally ill prisoner for twenty-two hours, where that restraint was not necessary to ensure safety, violated that prisoner's constitutional rights. The law of qualified immunity does not require that the exact conduct alleged has been found unconstitutional by a court; it only requires that a prison official have "fair warning." "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741, 122 S.Ct. 2508. The right not to be subject to the use of excessive force was clearly established in August of 1998.

That a twenty-two hour restraint with no penal justification, no food or water, and no access to the bathroom would constitute excessive force was similarly clearly established. The Supreme Court has held that the relevant question in determining whether an Eighth Amendment violation has occurred is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal citations and quotations omitted). Ziemba claims that the twenty-two hour period of restrain was unnecessary on two counts. First, he claims and provides evidence to support his claim that had prison officials not denied him prescribed medications, restraint would have been unnecessary to maintain

discipline. Furthermore, he claims that for much of the time he was restrained, the restraints were no longer necessary for the purpose of preventing harm to prison officials, prison property, or Ziemba himself. Under these facts, prison officials had fair warning that a twenty-two hour period of restraint, where such restraint was unnecessary to maintain discipline, of the sort suffered by Ziemba would violate that right were clearly established at the time.

The law is clear that mental health care must be provided to prisoners under the Eighth Amendment. *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.1989) ("We think it plain that from the legal standpoint psychiatric or mental health care is an integral part of medical care. It thus falls within the requirement of *Estelle v. Gamble, supra*, that it must be provided to prisoners."). At the time of the alleged violation, there could be no doubt that access to mental health services fell within the ambit of the Eighth Amendment. Furthermore, it is clear within the text of *Estelle* that denial or delay of provision of medication or treatment, with respect to either physical or mental health, can constitute an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 104–05, 97 S.Ct. 285. The Department of Correction Security Division concluded that medical personnel who examined Ziemba during the period of restraint failed to address his complaints with respect to physical ailments he suffered as a result of the use of restraints. The allegations describe violations of clearly established rights and qualified immunity does not attach to any of the five defendants as a matter of law.

## III. CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment is DENIED with respect to defendants Armstrong, Gomez, Clark and McAllister. Defendant Oglesby's motion for summary judgment is GRANTED.

**SO ORDERED.**